**GOVERNMENT SYSTEMS ADVISORS, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 31–87C.**

United States Claims Court.

Oct. 30, 1987.

Michael E. Geltner, Washington, D.C., for plaintiff.

Helene M. Goldberg, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action comes before the court on cross motions for summary judgment. Plaintiff alleged breach of its contract by defendant's failure to exercise options to extend the contract up to a term of sixty months and requested damages in the amount of unpaid lease payments. De-

---

fendant denied plaintiff's claims asserting that it properly exercised its unilateral right not to renew the contract for additional years and because it lacked funds to continue the contract.

## FACTS

The contract upon which this claim is based was between the United States acting through the Office of Legislative Affairs of the Department of Justice and Digital Information Systems Corporation (DISC). In April of 1984, defendant and DISC entered into a "lease to ownership" contract for the procurement of automatic data processing hardware, software and related services to be used by defendant's attorneys and staff.[1] The contract called for a one-year contract with options available to defendant to extend the contract for four additional years up to a maximum period of sixty months. DISC properly assigned its right to receive payment to plaintiff, Government System Advisors, Inc. 31 U.S.C. § 3727 (1982).

The contract provided that defendant was obligated to lease the equipment from the date of delivery through September 30, 1984. In compliance with the Federal Anti-Deficiency Act, 31 U.S.C. § 1341 (1982), the contract contained a clause limiting the defendant's contractual liability for subsequent years until funds were made available by Congress for the next fiscal year. The contract's AVAILABILITY OF FUNDS clause, Article XVIII, provided:

> Funds are not presently available for performance under this contract beyond September 30, 1984. The Government's obligation under this contract beyond that date is contingent upon the availability of appropriated funds from which payment for contract purposes can be made. No legal liability on the part of the Government for payment of any money for performance of orders issued after September 30, 1984, shall arise unless and until funds are made available to the Contracting Officer for such perform-

ance and notice of such availability, to be confirmed in writing by the Contracting Officer, is given to the Contractor.

The contract also contained numerous general provisions including annual renewal option and termination for convenience clauses which could be exercised by defendant. General Provision 102, entitled OPTION TO EXTEND THE TERM OF THE CONTRACT, provided in part:

> This contract is renewable ... at the option of the Government, by the Contracting Officer giving written notice of renewal to the Contractor by the first day of each fiscal year of the Government or within 30 days after funds for the fiscal year become available, whichever date is later.

On September 25, 1984, defendant exercised its option to renew the contract for FY 1985 and on October 1, 1985, defendant again exercised its option to renew the contract for FY 1986. During the course of FY 1986, defendant determined that it would not renew the contract for additional years. On September 8, 1986, defendant notified DISC that the contract would not be renewed after September 30, 1986. Defendant informed DISC that the computer software system installed by DISC was not being utilized to its full capacity and that funds sufficient to exercise the FY 1987 option had not been appropriated.

On October 2, 1986, defendant notified plaintiff that defendant was withholding all payments for the four months prior to September 30, 1986, pending removal of the DISC system from defendant's offices, even though defendant had obligated itself for all the monthly lease payments for the system during the entire 1986 fiscal year. Subsequently, the equipment was removed.

Plaintiff asserted that renewal of the contract was obligatory upon the availability of funds and that defendant's decision to terminate was not properly based upon the unavailability of funds for FY 1987. Plain-

---

1. A "lease to ownership" contract as described in Article II and Paragraph 102 of the General Provisions of the contract gave defendant the opportunity to purchase the leased equipment and software at any time prior to, or on, a date 60 months from the date of acceptance of the last delivered item of the initial quantity.

tiff maintained that termination by defendant constituted a breach of contract under which plaintiff incurred damages in the amount of $355,910.02; the amount of the unpaid lease payments.

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a) (1982), because it is an action for damages arising from an express contract with the United States. This action is brought under the Contracts Dispute Act of 1978, 41 U.S.C. § 609 (1982).

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). In evaluating a motion for summary judgment, any doubt over whether there is a genuine issue of material fact must be resolved in favor of the nonmoving party. *Housing Corp. v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). In addition, the "inferences to be drawn from the ... facts .... must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Ball v. United States*, 1 Cl.Ct. 180, 183 (1982). The court is of the opinion that there are no genuine issues of material fact in dispute and that the case is properly before this court for disposition on cross motions for summary judgment.

The issue presented to the court is whether, pursuant to the terms of the contract, defendant could decline to exercise its option to extend the lease for succeeding years.

The parties make much ado about whether the lease in question is a multiyear contract or a contract with four options to renew for succeeding fiscal years. It is true that there are some relatively major differences between the two types of contracts, however, after careful scrutiny of the law, regulations, facts and arguments of law the court is of the opinion that, in reality, the type of contract in the case at bar is not material to the outcome. There is a threshold question that must first be satisfied, *i.e.*, regardless of the type of contract, in the absence of an appropriation, may the contract option to extend be exercised?

Section 1341 of Title 31 of the United States Code, the Anti–Deficiency Act, provides with certain exceptions that:

> An officer or employee of the United States Government ... may not make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation; or involve ... government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law.

It is not alleged or claimed that the lease in question was made under any specific authority of law that would exempt the present contract from the limitation of the Anti–Deficiency Act. To the contrary, the contract in question contained the requisite availability of funds clause.

Defendant established to the satisfaction of the court that the contract option for FY 1987 was not exercised because of a lack of available funds. The Office of Legislative Affairs had not been allocated sufficient funds to finance both the lease and its other vital services and functions. During the budgeting process, defendant projected a deficit for equipment rental charges for FY 1987. Plaintiff's only rebuttal to this argument was that the contracting officer was unaware whether lack of funding was a reason for the discontinuance of the contract. This rebuttal is unpersuasive because the contracting officer was not the decision-maker but was merely the conduit through which the decision-makers transmitted their decision to the contractor.[2] In this case, the knowl-

---

**2.** As a practical matter, contracting officers, in general, must rely upon advice from the budget office or the ultimate user of the product or

edge of the contracting officer must be given very little weight in the determination not to extend the lease into subsequent fiscal years.

██ Arguendo, if funds were available, the contract in dispute still gave defendant the authority to decline to exercise the option to renew the lease for FY 1987. Although Article II states that prices were determined upon a sixty-month system life, there is nothing in the contract which indicates that defendant was bound to continue to lease the equipment for the full sixty months. Plaintiff's reliance on Article II to support its claims that the contract envisioned a fixed sixty-month obligation is more accurately construed as merely setting the maximum number of months at which defendant could procure the hardware, software and services at the contract price. However, as already noted, Article II specifically gave to defendant the opportunity to purchase the equipment, etc., prior to the end of the potential sixty-month lease. The inclusion of General Provision 102, entitled OPTION TO EXTEND THE TERM OF THE CONTRACT merely evidenced that defendant had the option to extend the contract term to a maximum length of sixty months. Plaintiff would have the court interpret the option clause, coupled with the availability of funds clause, as mandating that upon the availability of funds defendant was obligated to renew the contract for the fiscal year to which the funds were appropriated, or terminate the lease for the convenience of the government. For this proposition plaintiff relies upon *Varo, Inc.*, 70–1 B.C.A. ¶ 8099, (A.S.B.C.A. Dec. 23, 1969). The contract dispute in *Varo* arose under a multiyear requirements contract which included an option provision to renew the contract term based upon the availability of appropriated funds. Because funds were appropriated in *Varo*, the court found that the government was required to exercise the option or terminate for the convenience of the government. Plaintiff has not established that the contract at bar was a multiyear requirements contract that satisfied the

requisite regulation of 48 C.F.R. §§ 17.101 to –.105 (1984) as in *Varo*. In a case more similar to the present case, the United States Supreme Court rejected the argument that because appropriated funds were available defendant was necessarily required to renew the lease. *Leiter v. United States*, 271 U.S. 204, 207, 46 S.Ct. 477, 478, 70 L.Ed.2d 906 (1926). In *Leiter*, petitioner sought to recover rent for office space which had been leased by the United States. The lease was for separate terms of several years. As in this case, the lease stated that funds had not been appropriated for the succeeding years and stipulated that government's liability was contingent upon appropriation of funds for each of the succeeding years. Despite the fact the funds were subsequently appropriated for the succeeding year, the government determined that it was in government's best interest not to renew. In rejecting the argument that government was required to renew the lease even if appropriated funds were available, the court stated:

> A lease to the government for a term of years, when entered into under an appropriation available for but one fiscal year, is binding on the Government only for that year. And it is plain that, to make it binding for any subsequent year, it is necessary, not only that an appropriation be made available for the payment of rent, but that the government, by its duly authorized officer, affirmatively continues the lease for such subsequent year.

*Id.* at 207, 46 S.Ct. at 478 (citations omitted).

Accordingly, even if sufficient funds for FY 1987 had been appropriated, defendant was not obligated to renew the lease for FY 1987, unless, in addition, defendant affirmatively established its intention to renew for the next fiscal year. In this case defendant affirmatively determined and notified plaintiff of its decision not to renew the contract. *Leiter* based its holding in part on sections 3679 and 3732 of the Revised Statutes, as amended by the Act of February 27, 1906, which stated that a

service to know whether sufficient funds exist

for any particular contract.

contract entered into by defendant beyond the first fiscal year in which funds were appropriated was executed without authority of law and thus created no binding obligation against the government after the first fiscal year. *Id.* at 206–07, 46 S.Ct. at 478. The contract executed in the case at bar is based upon similar language found in 31 U.S.C. § 1341 (1982), which derived from the Acts cited in *Leiter.* Under the Anti-Deficiency Act, defendant is prohibited from entering into a contract before a sufficient appropriation of funds is made. Thus, any contract entered into by defendant beyond the year in which appropriations are made is made without authority of law and is not binding. Consequently, if this court were to accept plaintiff's contention that defendant is obligated for sixty months, the court would run afoul of the law. This, the court will not do.

The court is left to conclude that defendant's obligation to exercise the FY 1987 option could arise only if sufficient funds were appropriated, and then, only if defendant exercised its option to renew. Since there was no appropriation available for the payment of the lease after FY 1986, an exercise of the option to continue the contract into FY 1987 would constitute a violation of 31 U.S.C. § 1341 and created no binding obligation against the United States. *Leiter,* 271 U.S. at 207, 46 S.Ct. at 478. In the absence of available appropriated funds, the contracting officer could not obligate defendant following FY 1986.

The court finds no need to resort to a contract interpretation which both distorts the provisions relating to the contract term and ignores other significant portions of the contract. Article XVIII of the contract clearly stated that defendant's obligation to lease the equipment did not extend beyond September 30, 1984. Beyond that date, defendant could be obligated only if Congress appropriated sufficient funds for the continuation of the contract and, even then, only if it exercised the option to extend the contract term. Thus, reading the various terms of this contract as a whole, this court concludes that the lease between defendant and DISC was a contract with a maximum term of sixty months with defendant having the option to renew the contract at the end of each fiscal year based upon the availability of funds. As we have seen, sufficient funds were not appropriated and made available to the Office of Legislative Affairs to continue the contract and fulfill its other purposes. Therefore, even though the Office of Legislative Affairs could have chosen not to renew, or to terminate the contract for its convenience, it did not have to do so. Congress, by not appropriating sufficient funds created an impassable block to exercise of the FY 1987 lease option.

Plaintiff's argument that, as in *Varo* where there has been an improper cessation of a multiyear requirements contract, the court should consider the refusal by defendant to exercise the 1987 lease as a termination for convenience is without merit and need not be addressed further. That holding was proper on the *Varo* facts. This court concludes, however, that such a holding has no application here because, unlike *Varo,* any obligation defendant might have had to exercise the 1987 option ceased with the lack of available funds.

### CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The Clerk is directed to dismiss the Complaint.

IT IS SO ORDERED.